# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| TIMOTHY KINNER a/k/a<br>TIMMY KINNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| VS. | ) | No. 15-2105-JDT-tmp |
| | ) | |
| TONY MOORE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

---

## ORDER TO MODIFY THE DOCKET,
## DENYING REQUEST FOR APPOINTMENT OF COUNSEL,
## PARTIALLY DISMISSING COMPLAINT
## AND DIRECTING THAT PROCESS BE ISSUED AND SERVED
## ON THE REMAINING DEFENDANTS

---

On February 12, 2015, Plaintiff Timothy Kinner a/k/a Timmy Kinner, ("Kinner"), who is incarcerated at the Shelby County Correctional Center ("SCCC") in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and a motion for leave to proceed *in forma pauperis*. (ECF Nos. 1 & 2.) On February 13, 2015, the Court granted leave to proceed *in forma pauperis* and assessed the civil filing fee pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 4.) The Clerk shall record the Defendants as Lieutenant ("Lt.") Tony Moore, Lt. Ricky Walker, Lt. Ezell Jackson, Sergeant ("Sgt.") Maurice Wright, Sgt. James Wilson, Sgt. Stanley Harris, Doris Smith, Benita Monix, Carol Gregory, Sgt. First Name Unknown

("FNU") Hurd, Officer ("Ofc.") E. Seay, Ofc. Chris King, Ofc. FNU Beasley, Ofc. FNU

Wilson, Ofc. Joshua West, Ofc. FNU Batton, Ofc. Anthony Douglas, Ofc. FNU

Richardson, Ofc. Ian Campbell, Ms. T. Rounds, Sgt. Danny Owens, CERT Ofc. Aston

Smith, Chief FNU Tillman, Chief FNU Spears, Ofc. Troy Green, Annette Bearden,

Tonya Beasley, Harry Blacker, Kelly Brumley, Nurse FNU Riggs, Ali Higgenbottom,

Ofc. FNU Fairbee, Ofc. FNU Dunn, and Sgt. FNU Graham.[1]

## I. The Complaint

Kinner's complaint includes numerous allegations about individual defendants and

general prison conditions at the SCCC.

Kinner alleges that on April 14, 2013, Defendant Moore came to Kinner's cell

when Kinner was complaining of being sick. Kinner had his hand in the food slot. (ECF

No. 1 at 2.) Defendant Moore slammed Kinner's hand in the food slot, hit his head with

a MasterLock, and sprayed him. (*Id.*)

Sometime during the month of September, October or November, Defendant

CERT Ofc. Smith allegedly "gave inmate a bag containing only half of my personal

property." Kinner alleges he was never reimbursed despite filing a grievance.[2] (ECF No.

---

[1] The complaint also purports to sue various unnamed groups of defendants: Medical Department Staff, Legal Library Personnel, Mental Health Department Personnel, Grievance Department Personnel, and Food Service Department Personnel. Service of process cannot be made on unidentified parties. The filing of a complaint against such unnamed defendants does not toll the running of the statute of limitation against those parties. *See Cox v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Bufalino v. Mich. Bell Tel. Co.*, 404 F.2d 1023, 1028 (6th Cir. 1968). The Clerk is directed to MODIFY the docket to terminate the aforementioned defendants.

[2] It is unclear whether Kinner is alleging that Smith returned to Kinner a bag containing only half of his personal property or whether the allegation is that Smith gave another inmate half of Kinner's personal property.

1-1 at 1.)  Kinner became so depressed at the lack of action on his grievance that he could not eat and think clearly.  (*Id.*)

Kinner claims that he has been generally denied access to legal research, assistance, aid and the law library.  (*Id*. at 1.)  Similarly, Kinner alleges that there has been a general denial of adequate mental health care, and Dr. Yaffe and Dr. Anagho, who are not parties to this complaint, have acted "unconcerned and insincere about helping to better his situation.  (*Id.*)

Kinner claims a number of defendants have lied in infraction/disciplinary reports. Kinner states that in September, Defendant Rounds lied in an infraction report, causing him to be punished for a sexual act that never occurred.  (*Id.* at 1)  Another accusation is that Defendant Douglas lied on an infraction report on December 24, 2014, claiming that Kinner said he was going to kill himself as well as falsely stating that Defendant Walker entered the dorm with Defendant Riggs.  (*Id.* at 2.)  Kinner alleges that Defendant Higgenbottom lied on his infraction report when he stated that Kinner had cups to possibly assault him with, which he used to justify spraying Kinner with pepper spray on December 13, 2014. (*Id.* at 3.)

Similarly, Kinner has a number of claims throughout the complaint about pain and suffering at the hands of prison guards. On September 12, 2014, Kinner alleges that Defendant Owens escorted him to medical while he was only half-dressed and barefoot, causing cuts on his feet from the trash and rocks on the concrete walkway.  (*Id.* at 1.) Kinner complains that Defendant Douglas forced Kinner to shower in the dark, which allegedly caused unspecified pain and suffering.  (*Id.* at 2.)

In a set of confusing accusations, Kinner alleges that he was not taken to medical after being sprayed, while handcuffed, by Defendants Walker, Richardson and Sgt. Wilson. (*Id.* at 2.) Kinner alleges he was on top of the eight-foot high indoor recreation cage when he was sprayed. He was assisted down by Ofc. Dukes, who is not a party, and by Defendant Douglas. Douglas choked Kinner's neck while escorting him from the recreation cage to the multi-purpose room, where there are no cameras, and Douglas then allegedly slammed Kinner face down. (*Id.*) Another physical and verbal assault followed later when Defendant Richardson and Ofc. Brewer, who is not a party, strip searched Kinner under orders of Defendant Walker, while Walker stood guard with a can of pepper spray. Kinner claims he was physically and verbally assaulted by Defendant Richardson and Brewer. (*Id.*) Kinner was then taken to isolation and given a dirty suicide prevention smock without being cleared by medical which, Kinner contends, was a violation of the SCCC rules. (*Id.*)

On February 1, 2014, Kinner alleges he was sprayed "without warning" by Defendant King. (*Id.* at 3.) Prior to being sprayed, Kinner complained to Defendant Wright about the conditions in his cell, but Defendant Wright refused to move him. (*Id.*) Kinner refused to come out of the "rec cage" and requested to speak with Defendant Wright's supervisor, Defendant Jackson. (*Id.*) After being sprayed by Defendant King, Kinner allowed them to cuff his hands. (*Id.*) Kinner was then escorted into the multi-purpose room where he alleges that he was slammed, verbally assaulted, kicked, punched, pinched and sprayed excessively by Defendants Seay, Ofc. Wilson, Batton, West, Beasley, King, and Wright simultaneously. (*Id.*) Thirty minutes later, Defendants

West and Beasley took Kinner to medical, and while they were escorting him, sprayed Kinner again in both eyes. When he asked why they sprayed him, West and Beasley told him their Lieutenant had ordered them to spray Kinner. (*Id.*) Kinner alleges that after decontamination he was returned to the same cell and continued to be subjected to inhumane living conditions. He also states he was not allowed a change of clothes or a shower to get rid of the pepper spray. (*Id.*).

In additional to physical abuse, Kinner alleges he suffered verbal abuse from various Defendants, including Defendant Dunn. Dunn allegedly subjected Kinner to verbal assault and racial comments and also refused to leave the light on in the area near Kinner's cell, forcing him to sleep in the dark on Dunn's shift five days a week, from September to November. (*Id.* at 2.)

Moreover, Kinner has numerous claims regarding the jail conditions. Kinner states that after Defendant Owens took him to medical on September 12, 2014, he was housed in an isolation cell where he was forced to eat and sleep in a cell that had no water, a broken toilet, and was infested with bugs until he was moved by Sgt. Chambers, who is not a party. (*Id.* at 1.)

Regarding the food at SCCC, Kinner alleges that "whoever is responsible" for the food service should be punished for the terrible meals provided. He alleges the trays are dirty, food products are expired and outdated, meats and other food products are raw or undercooked, the food is cold and inedible, and the portions are inadequate. (*Id.* at 2.) Kinner further alleges that Defendant Green is responsible for unsanitary practices while issuing food trays and beverages and that Defendants Campbell, King and Ofc. Wilson,

as well as other officers, only wear gloves, not beard guards or face masks, thus exposing Kinner to "illness and contagious diseases." (*Id.*) Kinner claims that Defendant Campbell forgot to give him lunch on September 11, 2014. (*Id.* at 1) Lastly, Kinner alleges that Defendant Graham failed to rectify a situation regarding unsanitary condition around food service after Kinner complained of hair in his food, the poor quality of food, dirty trays, and receiving the wrong food after his diet was changed by medical. (*Id.* at 3.)

Kinner alleges that Defendants Tillman and Spears were informed about complaints regarding staff and jail conditions, but failed to reply back to Kinner to address the issues. Kinner feels "they should be held accountable for their staff's actions." (*Id.* at 1.)

Kinner contends that the Grievance Department has made excuses for violating policy, procedure, and guidelines, because no appropriate action has been taken to any of his complaints. Kinner alleges that Defendants Tonya Beasley, Blacker, Brumley, and Bearden are responsible and should be subject to legal actions. (*Id.* at 2.) Likewise, Kinner alleges that if Defendants Monix, Hurd, Gregory and Doris Smith had followed the proper procedures for disciplinary hearings and appeals "80 percent of this damage and chaos could have been prevented." (*Id.* at 3.) Kinner contends that based on policy, his infractions should have been dismissed. Kinner further contends that Defendant Monix ruled on an infraction while he was on suicide prevention, which allegedly was a violation of policy. Kinner contends this caused a delay in his release. (*Id.*)

Kinner alleges that Defendant Harris denied him access to suicide prevention status even though Kinner informed him that he was going to commit suicide on December 13, 2014. (*Id.* at 3.) Harris allegedly said, "go ahead & kill yourself then." (*Id.*) Kinner attempted to commit suicide by hanging himself from the sprinkler system, and it went off, causing the cell to flood. He was then removed from the cell and placed on suicide precaution status. (*Id.*)

Kinner seeks to have criminal charges brought against the appropriate people as well as monetary compensation for pain and suffering. (ECF No. 1 at 3.) Kinner seeks to be moved to protective custody for the remainder of his time at the SCCC. (*Id.*) Kinner has also requested a lawyer to handle his case. (*Id.*)

Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, "[t]he appointment of counsel in a civil proceeding is not a constitutional right." *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003); *see also Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("[T]he plaintiffs were not entitled to have counsel appointed because this is a civil lawsuit."); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (no constitutional right to counsel in a civil case); *Farmer v. Haas*, 990 F.2d 319, 323 (7th Cir. 1993) ("There is no constitutional or . . . statutory right to counsel in federal civil cases . . . ."). Appointment of counsel is "a privilege that is justified only by exceptional circumstances." *Lavado*, 992 F.2d at 606 (internal quotation marks and citation omitted). "In determining whether 'exceptional circumstances' exist, courts have examined the type of case and the abilities of the plaintiff to represent himself. This generally involves a determination of the

complexity of the factual and legal issues involved." *Id.* at 606 (internal quotation marks and citations omitted). Appointment of counsel is not appropriate when a *pro se* litigant's claims are frivolous or when his chances of success are extremely slim. *Id.* (citing *Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985)); *see also Cleary v. Mukasey*, 307 F. App'x 963, 965 (6th Cir. 2009) (same).

Kinner has not satisfied his burden of demonstrating that the Court should exercise its discretion to appoint counsel in this case. Nothing in the complaint serves to distinguish this case from the many other cases filed by *pro se* prisoners who are not trained attorneys and who have limited access to legal materials. Therefore, the request for appointment of counsel is DENIED.

## II. Analysis

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)    is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2)    seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the court applies the standards under Federal Rules of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-pleaded allegations in the complaint as true, the

Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original). "[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally. Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted." *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915). Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness. *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Kinner*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Kinner v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

Kinner filed his complaint on the court-supplied form for actions under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements:  (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

The complaint contains no factual allegations against Defendants Jackson, Riggs and Fairbee.  When a complaint fails to allege any action by a defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Kinner's § 1983 claims against Defendant Moore arising out of the alleged assault is time barred.  The complaint alleges the assault occurred on April 14, 2013, and the complaint was signed and dated February 9, 2015.  (ECF No. 1 at 3.)  The statute of limitations for a § 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *see also Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985) (same).  The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tennessee Code

Annotated § 28-3-104(a)(3).  *Roberson v. Tenn.*, 399 F.3d 792, 794 (6th Cir. 2005); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 547 (6th Cir. 2000); *Berndt v. Tenn.*, 796 F.2d 879, 883 (6th Cir. 1986).  Accordingly, Kinner's claim concerning the alleged assault that occurred on April 14, 2013, is barred by the one-year statute of limitations.

Defendants Tillman and Spears cannot be held liable as supervisors.  Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."  *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own official actions, violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific instance of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted).  A supervisory official who is aware of the unconstitutional conduct of his or her subordinates, but fails to act, generally cannot be held liable in his or her individual capacity.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). A failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability.  *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the

[constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). Defendants Tillman and Spears are not alleged to have had any personal involvement in the events at issue apart from the allegation that they were informed about Kinner's grievances.

Kinner alleges that Defendants Tonya Beasley, Blacker, Brumley, Bearden, Monix, Hurd, Gregory and Doris Smith failed to follow the appropriate grievance procedure. Inmates do not have a right under the Due Process Clause to an effective grievance mechanism. *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Shehee*, 199 F.3d at 300; *Smith v. Corr. Corp. of Am.*, 19 F. App'x 318, 321 (6th Cir. 2001) (holding that prisoner "had no constitutional right to . . . disciplinary or grievance systems that met his standards"); *Irvin v. Fluery*, No. 2:07-cv-117, 2007 WL 5328577, at *2 (W.D. Mich. Sept. 11, 2007) ("[T]he Sixth Circuit and other circuit courts have held that there is no constitutional right to access an institutional grievance procedure.") (report and recommendation), *adopted*, 2007 WL 3036493 (W.D. Mich. Oct. 16, 2007); *Mackey v. Carberry*, No. 2:07-cv-43, 2007 WL 2479296, at *3 (W.D. Mich. Aug. 28, 2007) (report and recommendation adopted as opinion of the Court); *Holloway v. Drew*, No. 2:07-CV-160-MEF, 2007 WL 1175067, at *2 (M.D. Ala. Apr. 4, 2007) (report and recommendation); *Robertson v. Montgomery Cnty.*, No. 3 06 0435, 2006 WL 1207646, at *2 (M.D. Tenn. Apr. 27, 2006) ("[S]tate law does not create a liberty interest in the

grievance procedure."); *Robinson v. Hastings*, No. Civ.A. 05CV387-KKC, 2006 WL 950185, at *4 (E.D. Ky. Apr. 10, 2006).[3]

Kinner's allegation that Defendant CERT Ofc. Smith only returned half of Kinner's personal property or gave another inmate half of Kinner's personal property is a property deprivation claim. Claims for deprivation of property are not actionable under 42 U.S.C. § 1983. *Parratt v. Taylor*, 451 U.S. 527 (1981), held that a negligent deprivation of personal property by state officials is not actionable under § 1983 if the state provides an adequate remedy for that deprivation. *Davidson v. Cannon*, 474 U.S. 344 (1986) and *Daniels v. Williams*, 474 U.S. 329 (1986) held that "the Due Process Clause [of the Fourteenth Amendment] is simply not implicated by a negligent act of an official causing unintended loss of or injury to . . . property." *Hudson v. Palmer*, 468 U.S. 517 (1984) held that an intentional deprivation of personal property by state officials is not actionable under § 1983 if the state provides an adequate remedy for that deprivation. *See also Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985). Plaintiff is entitled to sue the Defendant, or any other responsible person, in state court for the deprivation of his property.

Kinner claims that he has been denied access to legal research, assistance, aid and the law library. However, the complaint does not assert a valid claim for denial of Kinner's First Amendment right of access to the courts. *See Kensu v. Haigh*, 87 F.3d

---

[3]*See also* 42 U.S.C. § 1997e(b) ("The failure of a State to adopt or adhere to an administrative grievance procedure shall not constitute the basis for an action under section 1997a or 1997c of this title.").

172, 175 (6th Cir. 1996); *see also Bounds v. Smith*, 430 U.S. 817, 821 (1977) ("It is now established beyond doubt that prisoners have a constitutional right of access to the courts.").  The Supreme Court has held that

> "[t]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds*, 430 U.S. at 828.  However, *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.  The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996); *see also Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) (inmates' First Amendment right of access to the courts "extends to direct appeal, habeas corpus applications, and civil rights claims only").

To have standing to pursue a First Amendment claim that he was denied access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' i.e., that the conduct hindered his efforts to pursue a nonfrivolous legal claim." *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see also Hadix v. Johnson*, 182 F.3d 400, 405-06 (6th Cir. 1999) (explaining how *Lewis* altered the "actual injury" requirement previously articulated by the Sixth Circuit).  "Actual injury" can be demonstrated by "the late filing of a court document or the dismissal of an otherwise meritorious claim." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  The

complaint does not allege that Kinner had any such actual injury or that, even if he did, any named Defendant was personally responsible.

Kinner claims that Defendants Rounds, Douglas, and Higgenbottom put false statements in their infraction disciplinary reports. There ordinarily is no right of action against a witness who testifies falsely at trial. In *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983), the Supreme Court held that police officers are absolutely immune from suits for money damages for alleged perjury during criminal trials. In so holding, the Supreme Court stated that private parties who testify in court traditionally have been immune from damages under § 1983. *See id.* at 330-34. Although a prison disciplinary proceeding is not precisely equivalent to a criminal trial, several courts have applied *Briscoe* to bar suits against prison employees who testify falsely at disciplinary hearings. *See, e.g.*, *Thomas v. Calero*, 824 F. Supp. 2d 488, 499 (S.D.N.Y. 2011) (report and recommendation adopted by district court); *McCullon v. Brouse*, No. 3:10-CV-1541, 2011 WL 1398481, at *8 (M.D. Pa. Mar. 24, 2011) (report and recommendation), *adopted*, 2011 WL 1419650 (M.D. Pa. Apr. 13, 2011); *Crumbley v. Dawson*, No. 9:09cv14, 2010 WL 2209189, at *5 (E.D. Tex. May 28, 2010); *Gibson v. Roush*, 587 F. Supp. 504, 506 (W.D. Mich. 1984).[4] Other courts have held that, where a prisoner has received the process that is due, he has no due process claim arising from even false

---

[4] In *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the Supreme Court held that disciplinary committee members were entitled to qualified, rather than absolute, immunity. That decision stressed that hearing officers are not independent and are not akin to professional hearing officers. They are, instead, prison officials and fellow employees of the individuals lodging charges against the inmate. *Id.* at 203-04. That decision did not address the immunity of witnesses at disciplinary hearings.

testimony at a disciplinary hearing. *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate by corrections officers is insufficient on its own to establish a denial of due process. Rather, such action violates due process only where either procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him, or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights ....") (citations omitted); *see also Crumbley*, 2010 WL 2209189, at *5 ("[T]he prisoner has a right to due process in the proceeding, which process can be provided only by the hearing officer, not by a witness, whether favorable or unfavorable."). Because there is no right of action against a police officer who testifies falsely at trial or a prison staff member who commits perjury during a disciplinary hearing, it necessarily follows that Kinner has no right of action for a false statement made regarding an infraction report.

Kinner cannot compel any criminal prosecution of any defendant. As a private citizen, Kinner has no authority to initiate a federal criminal prosecution of any defendant for alleged unlawful acts. *Kafele v. Frank & Wooldridge Co.*, 108 Fed. App'x 307, 308-09 (6th Cir. 2004) (citing *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986); *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989); *Hamilton v. Reed*, 29 Fed. App'x 202, 204 (6th Cir. 2002) (same).

Kinner's complaint raises various issues regarding conditions at the SCCC. For a convicted prisoner such as Kinner, these claims arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S.

294 (1991). An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298; *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious." *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.

To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (internal quotation marks omitted). *See also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) ("To succeed in an Eighth Amendment challenge, [a prisoner] must establish that . . . a single, identifiable necessity of civilized human existence is being denied . . . ."). The Constitution "does not mandate comfortable prisons." *Wilson*, 501 U.S. at 298 (internal quotation marks and citation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (internal quotation marks and citation omitted). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* at 9.

In considering the types of conditions that constitute a substantial risk of serious harm, the Court evaluates not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that

risk violates contemporary standards of decency, *i.e.*, that society does not choose to tolerate the risk in its prisons. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). The Supreme Court has also emphasized that prisoners can rarely establish an Eighth Amendment violation from a combination of conditions of confinement that, in themselves, do not rise to the level of a constitutional violation:

> *Some* conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing as amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists.

*Wilson*, 501 U.S. at 304-05 (citation omitted); *see also Thompson*, 29 F.3d at 242 ("Eighth Amendment claims may not be based on the totality of the circumstances, but rather must identify a specific condition that violates" a particular right); *Carver v. Knox Cnty., Tenn.*, 887 F.2d 1287, 1294 (6th Cir. 1989) (same).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297, 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling*, 509 U.S. at 32; *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d

810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 79 (6th Cir. 1995).

"[D]eliberate indifference describes a state of mind more blameworthy than negligence."

*Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38, 114 S. Ct. at 1979 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop v. Hackel*, 636 F.3d 757, 767 (6th Cir. 2011); *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

The complaint alleges unsanitary and inadequate food service. Regarding the food service, the Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health. *Clark-Murphy v.*

*Foreback*, 439 F.3d 280, 292 (6th Cir. 2006); *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). "Food served to inmates need not be appetizing. The Eighth Amendment merely requires that it be prepared and served in a sanitary environment and that it be adequate to meet an inmate's essential nutritional needs." *Heinz v. Teschendorf*, No. 05-CV-73470, 2006 WL 2700813, at *8 (E.D. Mich. Sept. 19, 2006). Isolated deprivations of food do not violate the Eighth Amendment; instead, the objective component is implicated only if a food deprivation endangers an inmate's health. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (isolated deprivations of food do not violate the Eighth Amendment); *Sims v. Mich. Dep't of Corr.*, 23 F. App'x 214, 216 (6th Cir. 2001) ("The fact that Sims may have been served one cup of fruit as part of a six-meal-per-day diet does not establish a deprivation of nutrition necessary to sustain his physical well-being. Furthermore, Sims did not allege that he was denied sufficient food on a daily basis or that he could not maintain his health based on the diet provided him even though one of the six meals he received per day may have consisted of one cup of fruit."); *Rhinehardt v. Semeroz*, No. 98-1588, 1999 WL 1021585, at *1 (6th Cir. Nov. 2, 1999) ("Loss of commissary food privileges is 'routine discomfort' that is 'part of the penalty that criminal offenders pay for their offenses against society.'"); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (inmate's Eighth Amendment rights were not violated when he was served one meal a day for 15 consecutive days because that meal was sufficient to maintain normal health).

Kinner complaints against various defendants regarding the poor quality and small portion sizes of food, the unsanitary conditions under which it is served, missing lunch on

one particular day, and being given food not on his medical diet meet neither the objective nor subjective requirements of an Eighth Amendment violation. There are no allegations that the food he received was not sufficiently nutritious to maintain Kinner's physical well-being or that he suffered any actual physical harm from the food itself, any lack thereof, any failure to provide him with medically approved diet, or any unsanitary conditions related to the food service.

With regard to other sanitation conditions, Kinner alleges he was taken to a cell that had no water and a broken toilet and was infested with bugs. (ECF No. 1-1 at 1.) However, he does not allege that he suffered any physical harm from those conditions. Kinner also does not allege that Defendant Owen or any other named Defendant was aware of or responsible for the conditions in the cell or that Defendant Owen or any other named Defendant was responsible for taking him to the cell.

Kinner also complains that Defendant Harris failed to place him on suicide prevention status after Kinner told Harris he was going to kill himself. Kinner alleges he did then attempt suicide, and only then was he was placed on suicide prevention status. However, there is no allegation that Defendant Harris was aware of any previous suicidal tendencies that would have alerted him to the fact there was a substantial risk that Kinner would harm himself. There also is no allegation that Kinner actually injured himself in the suicide attempt, as he states only that he tried to hang himself from the sprinkler system and it went off, flooding the cell.

In addition, neither the allegation against Defendant Douglas for forcing Kinner to shower in the dark nor the allegation against Defendant Dunn for causing Kinner to

have to sleep in the dark sufficiently states an Eighth Amendment claim. Kinner does not allege that either showering or sleeping in the dark posed an excessive risk to his health or safety. Kinner also does not allege that he actually suffered any physical harm as a result of having to shower or sleep in the dark.

Kinner alleges that he suffered both physical and verbal abuse at the hands of numerous Defendants. However, any alleged threats or claims of verbal abuse do not satisfy the objective component of an Eighth Amendment claim. *See, e.g., Pasley v. Conerly*, 345 F. App'x 981, 984 (6th Cir. 2009); *Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (no Eighth Amendment claim for prison guard's "use of racial slurs and other derogatory language"); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (a guard's verbal threat to sexually assault an inmate "was not punishment that violated [the prisoner's] constitutional rights"); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." (citation omitted)); *Owens v. Johnson*, No. 99-2094, 2000 WL 876766, at *2 (6th Cir. June 23, 2000) ("The occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. The petty exchanges of insults between a prisoner and guard do not amount to constitutional torts." (citation omitted));

*Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment); *Miles v. Tchrozynski*, No. 2:09-CV-11192, 2009 WL 960510, at *1 (E.D. Mich. Apr. 7, 2009) ("Even verbal threats by a corrections officer to assault an inmate do not violate an inmate's Eighth Amendment rights. Verbal threats and abuse made in retaliation for filing grievances are likewise not actionable." (citation omitted)).

With regard to Kinner's claims of physical assault and abuse, in the context of excessive force, the objective and subjective components of Eighth Amendment analysis merge into a single inquiry because, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. Thus, the relevant inquiry in any excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

In determining whether the force was applied in a malicious or sadistic manner, the Court should consider such factors as the need for the application of the force, the amount of force used, and the extent of the injury inflicted. *Whitley*, 475 U.S. at 321. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson v. Glick*, 481 F.2d 1028, at 1033 (2d Cir. 1973).

Kinner's allegation that Defendant Owens took him to medical while only half dressed and barefoot, causing Kinner to cut his feet, does not sufficiently state a claim for

excessive force because there is no allegation suggesting that Owens intended to harm Kinner. However, for purposes of screening, the Court finds Kinner has alleged plausible Eighth Amendment excessive force claims against Defendants Seay, Ofc. Wilson, Batton, West, Ofc. Beasley, King and Wright based on the allegations that on February 1, 2014, Kinner was handcuffed and taken to the multi-purpose room where he was slammed, kicked, punched and pepper-sprayed. Kinner has also alleged plausible Eighth Amendment excessive force claims against Defendants Walker, Richardson, Douglas and Sgt. Wilson with regard to the incident that occurred on or about December 24, 2014, in which Kinner allegedly was pepper-sprayed, choked, slammed face down, and physically assaulted while being strip searched, all while he was handcuffed.

## III. Conclusion

The Court DISMISSES Kinner's claims against Defendants Moore, Jackson, Harris, Doris Smith, Monix, Gregory, Hurd, Campbell, Rounds, Aston Smith, Tillman, Spears, Green, Bearden, Tonya Beasley, Blacker, Brumley, Riggs, Higgenbottom, Fairbee, Dunn and Graham pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) for failure to state a claim on which relief may be granted. However, process will be issued for the following Defendants on Kinner's Eighth Amendment claims of excessive force: Ofc. E. Seay; Ofc. FNU Wilson; Ofc. FNU Batton; Ofc. Joshua West; Ofc. FNU Beasley; Ofc. Chris King; Sgt. Maurice Wright; Lt. Ricky Walker; Ofc. FNU Richardson; Ofc. Anthony Douglas; and Sgt. James Wilson.

It is ORDERED that the Clerk shall issue process for Ofc. E. Seay; Ofc. FNU Wilson; Ofc. FNU Batton; Ofc. Joshua West; Ofc. FNU Beasley; Ofc. Chris King; Sgt.

Maurice Wright; Lt. Ricky Walker; Ofc. FNU Richardson; Ofc. Anthony Douglas; and Sgt. James Wilson and deliver that process to the U.S. Marshal for service. Service shall be made on the Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10), either by mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Kinner shall serve a copy of every subsequent document he files in this cause on the attorneys for the Defendants or on any unrepresented Defendant. Kinner shall make a certificate of service on every document filed. Kinner shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[5]

Kinner shall promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**                          
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[5] A copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the Court's website at www.tnwd.courts.gov/pdf/content/LocalRules.pdf.